## HARTFORD FIRE INS. CO., HARTFORD, CONN., v. LOGAN GRAIN CO.

### No. 11432.

Circuit Court of Appeals, Eighth Circuit.

Aug. 1, 1939.

Howard G. Fuller, of Fargo, N. D. (C. G. Myers, of Chicago, Ill., Fuller & Powers, of Fargo, N. D., and Myers & Snerly, of Chicago, Ill., on the brief), for appellant.

Francis Murphy, of Fargo, N. D. (R. L. Van Fossen, of Minneapolis, Minn., on the brief), for appellee.

Before GARDNER and THOMAS, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

This action was brought in the Circuit Court of Cass County, North Dakota, by the Logan Grain Company, a North Dakota corporation, hereafter called the plaintiff, against Hartford Fire Insurance Company, a foreign corporation, hereafter called the defendant, to recover upon two certain policies or contracts of fire insurance covering, respectively, two certain grain elevators described therein.

The complaint sets forth three separate causes of action. By the first, plaintiff seeks to recover the sum of $9,500 by reason of the loss of Elevator No. 1; by the second, plaintiff seeks to recover the sum of $8,500 by reason of the loss of Elevator No. 2. The third cause of action, brought to recover on a policy insuring grain, was settled and dismissed prior to the trial.

Defendant's answer admits all of the material allegations of the complaint, except that the defendant denies that by reason of said contracts, or otherwise, said properties were, in fact, insured by the defendant company in plaintiff's favor against loss by fire; denies the defendant has become indebted or obligated for the payment to the plaintiff of the sums demanded in said complaint; and alleges that the grain elevators covered by the policies in suit were personal property, located on portions of the railroad right of way, which was leased and occupied by the plaintiff as a tenant, and that, at the time of the application for the issuance and delivery of said insurance policies to the plaintiff; said properties were covered by a certain chattel mortgage made and delivered by plaintiff to McCarthy Bros. Co., a corporation, of Minneapolis, Minnesota, mortgagee; that said mortgage, according to its terms, was given to secure the payment by plaintiff to the mortgagee of the sum of fourteen thousand dollars then owing by plaintiff to said mortgagee, together with such future advances as might from time to time be made by said mortgagee to the plaintiff; that said mortgage was filed for record in the office of the Register of Deeds, Logan County, North Dakota, on or about July 24th, 1937, and that said mortgage indebtedness at the commencement of said suit was in excess of the sum of eighteen thousand dollars; that each of said insurance contracts contained the following provisions: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if * * * the subject of the insurance be personal property and be or become incumbered by chattel mortgage." And further that: "No officer, agent or representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such power, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Said answer, among other things, further alleged that there were no provisions

or conditions written into or attached to said insurance contract waiving, changing or modifying the effect and meaning of the provisions thereof, or in any way or manner making said policies effective insurance on incumbered personal property, contrary to the terms of said insurance as above set forth; and that upon the refusal of the defendant company to pay the amount of said policies as demanded by the plaintiff, the said defendant company promptly tendered back to the plaintiff the amount of premiums theretofore paid by the plaintiff to the defendant, and that the defendant now offers to deposit in court for the use and benefit of the plaintiff such amount as, in this behalf, may be ordered so deposited or paid to the plaintiff. That on the 11th day of August, 1938, pursuant to proper proceedings, said case was removed to the District Court of the United States for the District of North Dakota, on account of the diversity of citizenship of the parties. By agreement of counsel the case was tried to the Court without a jury upon a stipulation as to the facts and the deposition of one witness. At the conclusion of the hearing the defendant requested certain findings of fact and conclusions of law, which request was denied except insofar as the proposed findings and conclusions were covered by and included in the findings and conclusions for the plaintiff thereafter signed and filed by the Court. The trial resulted in judgment in favor of the plaintiff on all of the issues, from which judgment the defendant has appealed to this Court.

There is no dispute as to the material facts of the case which, briefly stated, are as follows:

Plaintiff was the owner of two frame, shingle-roofed, electric-powered, grain elevators and auxiliary buildings, situated in Burnstad, Logan County, North Dakota; on or about October 5th, 1937, the defendant insurance company issued a policy of insurance upon each of said elevators, insuring the owners thereof against loss or damage by fire for a period of one year from the 14th day of October, 1937, to the 14th day of October, 1938, in the sum of $9,500 as to one elevator and in the sum of $8,500 as to the other elevator. Each of these policies contained, among other things, the following provisions: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the subject of the insurance be personal property and be or become incumbered by chattel mortgage." And: "No officer, agent or representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions, no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such power, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." Attached to each of said policies was a rider containing a so-called "loss payable clause", reading as follows: "Loss, if any, payable to McCarthy Brothers Company, Minneapolis, Minnesota, as their interest may appear."

On or about the 15th day of October, 1937, both of said elevators were destroyed by fire; immediately thereafter plaintiff notified defendant of said loss and demanded the defendant furnish proof of loss blanks in accordance with the terms of the contract; that the defendant failed and neglected and refused to furnish said blanks; that the plaintiff furnished the defendant with proper proofs of loss, according to the requirements of each of said policies, and that no part of the loss as to either policy has been paid. That during the year prior to the issuance of the policies in suit the elevator properties were each insured under identical policies, written by the defendant company and issued to the plaintiff, one of said policies having attached thereto a so-called loss payable clause identical with the loss payable clause attached to the policies in suit, and the other of said policies having attached thereto a loss payable clause in words and figures as follows: "Loss, if any, payable to the Independent Grain & Fuel Company, and to McCarthy Brothers Company, Minneapolis, Minnesota, as their respective interests may appear."

At the time of the issuance of the two policies last referred to, the local agent of the defendant company, who ordered, countersigned and delivered said policies, knew that there was some unrecorded agreement between the plaintiff and McCarthy Brothers Company whereby the said plaintiff

was to receive advances of money from said McCarthy Bros. Co., and also knew that the plaintiff was indebted to Independent Grain & Fuel Company, and that said last mentioned indebtedness was secured by chattel mortgage on the elevator insured, and as a result of that knowledge, the riders containing the loss payable clause was attached to the policies written in 1936. The policies above referred to were written in the Chicago office of the defendant company and forwarded to W. D. Huepel, the local agent of the defendant company, residing at Napoleon, North Dakota, and who was cashier of the Stock Growers Bank in Napoleon during all of the time since the latter part of 1936. Sometime shortly prior to the expiration of the policies written in 1936, Huepel, the local agent of the defendant, notified the plaintiff that said policies were about to expire and solicited the renewal thereof, and he received from the plaintiff instructions to have the policies renewed in all respects exactly as previously written. This information was by him conveyed to the defendant company at its Chicago office and shortly thereafter the policies in suit were forwarded to the local agent to be countersigned by him and delivered to the plaintiff. Immediately upon receipt of the policies the said W. D. Huepel, local agent of the defendant company, wrote to McCarthy Brothers Company advising them that the policies of insurance previously covering said elevators had been renewed exactly as formerly written, and in reply to said letter received a request from McCarthy Brothers Company that the policies in suit be forwarded to them. That for some time previous to the month of July, 1937, McCarthy Brothers Company had been making advances of money to the plaintiff company under an unrecorded agreement between said parties; that on or about the 23rd day of July, 1937, plaintiff being indebted to McCarthy Brothers Company in the sum of fourteen thousand dollars, or thereabouts, under said agreement, made and delivered to McCarthy Brothers Company its chattel mortgage covering the elevator property involved herein as security for the payment of said sum and future advances; that said mortgage was filed for record in the office of the Register of Deeds, Logan County, North Dakota, on or about the 24th day of July, 1937. That in the month of July, 1937, the local agent, Huepel, while acting as

cashier of the Stock Growers Bank, in the examination of a certain transcript of the records in the office of the Register of Deeds of Logan County, North Dakota, learned of the existence of said chattel mortgage, and made a notation upon said transcript indicating that it was an instrument which should be entered in the credit files of the bank. That during the negotiations for the renewal of the insurance and the issuance of the policies in suit, no mention was made by any of the parties of the existence of said chattel mortgage. As to these negotiations, the agent, Huepel, was asked the following question and gave the following answer:

"Question: You knew, did you not, that there was attached to the previous policies clauses to the McCarthy Brothers Company and the Independent Grain & Fuel Company? Answer: Yes. We knew at one time they were attached, but at the time of making this request I did not give the mortgage clause any thought, except the McCarthy Brothers, because of the fact that Mr. Reed had informed me that McCarthy Brothers wished the policies."

While the policies in suit were written at the Chicago office of the defendant company, no written application, signed by the plaintiff company was made or required; no inquiries as to title to, or incumbrance upon, the property insured were made by the defendant company, and no representations were made by the plaintiff.

This appeal is based upon alleged errors on the part of the trial court as to the findings of fact, conclusions of law and the direction for the entry of judgment, which are set forth in defendant's brief in seven separate specifications. The first three specifications of error urged by the defendant are closely related and for that reason may conveniently be considered together.

The defendant first claims error as to that portion of the Court's finding of fact No. 15, which reads as follows: "That said W. D. Huepel, as said agent, had personal knowledge of the existence of the chattel mortgage to McCarthy Bros. Co., prior to the issuance of the policies involved in this action; that said W. D. Huepel had personal knowledge of the existence of said mortgage at the time of the delivery of the policies to this plaintiff after the fire, which knowledge is chargeable and imputed to the defendant.", for the reasons:

"(a) There is complete and absolute want of evidence to support said finding;

"(b) It is squarely opposite and contrary to the undisputed evidence;

"(c) For the further reason the said mixed finding and conclusion, examined in the light of the Court's refusal of the defendant's requested conclusions of law numbered 1 and 2, is shown to have been arrived at by application of the erroneous theory of law that a principal must automatically and arbitrarily be charged with knowledge of facts casually and indefinitely noted by its agent while acting in the capacity of agent for and in the transaction of the business of another principal."

An examination of the record discloses that the undisputed evidence in the case shows conclusively that said W. D. Huepel, the local agent of the defendant, acquired positive knowledge of the existence of the mortgage to McCarthy Bros. Co., and the record of the same, in the office of the Register of Deeds for Logan County, North Dakota, during the month of July, 1937, prior to the issuance of the policies in suit. While it is true that the witness, Huepel, testified that from the time he discovered the existence of the mortgage in July until he talked to Mr. Reed subsequent to the fire, the fact that there was a McCarthy Bros. Co. mortgage on the property did not occur to his mind, and that he did not have any chattel mortgage in mind during that time, he also testified that he knew about the loss payable clause attached to the policies issued in 1936, and that the same were attached as a result of the existence of a chattel mortgage on one of the elevators in favor of Independent Grain & Fuel Co., and as a result of information which he had as to a certain unrecorded agreement between McCarthy Bros. Co. and the plaintiff relating to advances of money made by the former to the latter. He also testified that the request for renewal of these policies was to the effect that they should be identical as to form with the policies previously written. In this connection, on Page 28 of the printed record, he testified as follows:

"Question: There was attached to one of the preceding policies, of which these are renewals, a loss payable clause to McCarthy Bros. Co., Minneapolis, and to the other, a loss payable clause to the Independent Grain & Fuel Co., and to McCarthy Bros. Co., of Minneapolis? Answer: We knew at one time they were attached but at the time of making this request I did not give the mortgage clause any thought, except the McCarthy Bros., because of the fact that Mr. Reed had informed me that McCarthy Bros. wished the policies."

A careful reading of the entire record has convinced us that the facts disclosed, together with the inferences that would naturally and reasonably flow therefrom, furnish ample grounds for the finding that the agent, Huepel, had personal knowledge of the existence of said mortgage at the time the order for the issuance of said policies was forwarded by him to the Chicago office, and also at the time of the delivery of said policies.

Defendant urges that the finding that this knowledge on the part of the agent is chargeable and imputed to the defendant company is error when said knowledge was acquired by the agent prior to this employment by the defendant company, or while said agent was acting in another capacity in the transaction of the business of another principal, unless it appears that such knowledge was present in the mind of the agent when he acted for the principal in the transaction in which the principal is sought to be charged with such knowledge or notice. This contention of the defendant is embodied in its proposed declarations of law numbered 1 and 2, and the failure of the Court to adopt said requested or proposed declarations of law is complained of by defendant.

We have no quarrel with the rule of law set forth in defendant's proposed declarations of law numbered 1 and 2, but in view of the findings of the trial court as to the knowledge of the agent, Huepel, of the existence of the chattel mortgage in favor of McCarthy Bros. Co. prior to the issuance of the insurance policies in suit, and that said agent had such personal knowledge at the time of the delivery of said policies after the fire, which said findings, as we have stated, are sufficiently supported by the record, we fail to see how the Court's refusal to adopt defendant's proposed declarations of law numbered 1 and 2 could, in any way, prejudice the defendant. For the reasons set forth above, we find no merit in the contentions of the defendant as to its specification of errors numbered 1, 2 and 3.

By defendant's specification of errors numbered 4 and 5, defendant asserts error

on the part of the trial court in refusing to adopt its requested declarations of law numbered 6 and 7, which read as follows:

"6. That by the attaching of said loss payable clauses, the defendant thereby did not waive the provisions and conditions of the policies providing for forfeiture thereof in event the property be incumbered by mortgage.

"7. That the attaching of the simple loss payable clause to the policies involved in this action, making the same payable to McCarthy Bros. Co. as their interest may appear, as the result of the directions of the plaintiff given to defendant's local agent to have existing policies renewed, did not impute notice or knowledge to the defendant that the property was incumbered by a chattel mortgage to the said McCarthy Bros. Co."

■■ The policies in suit are North Dakota contracts and the law of that state, as interpreted by its courts, is binding upon this court. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. If, therefore, the plaintiff is correct in its contention that under the North Dakota rule the breach of the forfeiture provisions in policies of fire insurance, such as those contained in the policies in suit, did not render the policy void but merely voidable, and that such provisions may be waived, or the insurer may be estopped to urge the forfeiture, and if the knowledge of the existence of the chattel mortgage to McCarthy Bros. Co. prior to their issuance of the policies in suit and at the time of the delivery of the same, under the North Dakota rule would estop the defendant from asserting said forfeiture, the question as to whether or not the fact that the loss payable clauses were attached to the policies constituted a waiver on the part of the defendant becomes wholly immaterial. An examination of the opinion of the North Dakota Supreme Court in Leisen v. St. Paul Fire & Marine Insurance Co., 20 N.D. 316, 127 N.W. 837, 30 L.R.A.,N.S., 539, and the cases cited therein, together with subsequent decisions by said court involving the same question, leaves no room for doubt as to the correctness of the plaintiff's contentions. It follows that, in our opinion, the defendant's claims of error on the part of the trial court, as set forth in specifications numbered 4 and 5, are untenable and without merit.

By specifications of error numbered 6 and 7 defendant claims error on the part of the Court in finding as a matter of law that the defendant waived the forfeiture provisions of said policies and that the defendant is estopped to set up the provisions as a defense, and that the Court erred in directing the entry of judgment for the plaintiff, for the reason that the findings and conclusions are unsupported by the evidence and are insufficient to support the judgment, and for the further reason that the findings and conclusions fail to state the theory or reason upon which the judgment was based. As stated above, we are convinced that the findings and conclusions are amply supported by the record in the case and are sufficient in every way to support the judgment appealed from.

Finding no error in the record, it follows that the judgment of the trial court should be and the same is, therefore, affirmed.